UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FRANK J. FERNANDEZ,
CDCR# D-61222,

Plaintiff,

vs.

R. MADDEN; E. DUARTE; J. HILL; J. SAIS; J. BONILLAS; D. LOOP; E. MATUS; A. ACUNA; J. JIMENEZ,

Defendants.

Case No.: 3:22-cv-0446-BAS-WVG

**ORDER:**

**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2);**

**(2) DENYING MOTION TO APPOINT COUNSEL (ECF No. 3);**

**(3) DISMISSING COUNTS 2, 3, 4 AND 5 PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) & 1915A; AND**

**(4) GRANTING PLAINTIFF LEAVE TO AMEND**

Frank Fernandez ("Plaintiff"), currently incarcerated at Pelican Bay State Prison ("PBSP"), and proceeding *pro se*, has filed this civil action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights when he was housed at Centinela State Prison ("CEN"). (*See* Compl. at 1, ECF No. 1.) Plaintiff seeks to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (IFP Mot., ECF No. 2) and moves for appointment of counsel (Mot. to Appoint Counsel, ECF No. 3).

**I. Motion to Proceed IFP**

A party who institutes a civil action, suit, or proceeding in a district court of the United States, except for an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in increments or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed, *see* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires a prisoner who seeks to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1), (b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

Under 28 U.S.C. § 1915, indigency is the benchmark for whether a plaintiff qualifies for IFP status. The determination of indigency falls within the district court's sound

[1] In addition to the $350 statutory fee, civil litigants must pay an administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "[s]ection 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement on indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993). It is well-settled that a party need not be completely destitute to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and the dependents with the necessities of life." *Id.* at 339. However, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR inmate trust account statement and prison certificate. (*See* IFP Mot.) This statement shows that Plaintiff has had average monthly deposits of $0.42 and an average monthly balance of $3800.83 during the six months preceding filing. (*See id.* at 5.) At the time of filing, he had $3,303.38 on account at PBSP. (*Id.*) This showing suffices to establish IFP status. *Cf. Thistle v. La Rose*, No. 21-CV-1414-JLS (MDD), 2021 WL 4150381, at *1 (S.D. Cal. Sept. 13, 2021) (granting IFP status where plaintiff had positive monthly cashflow of approximately $850 and owned assets valued at approximately $20,000).

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $350 pursuant to 28 U.S.C. Section 1915(b)(1).[2] The Court directs the Secretary of the CDCR, or their designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed.

---

[2] As stated above, the Court must assess an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater. In this case, 20% of Plaintiff's average monthly balance is $760.17 which far exceeds the $350 filing fee owed. Therefore, the Court will limit the initial partial filing fee to $350.00.

*See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

**II. Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A**

**A. Standard of Review**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must review and *sua sponte* dismiss an IFP complaint, and any complaint filed by a prisoner seeking redress from a governmental entity, or officer or employee of a governmental entity, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure [("Rule")] 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**B. Plaintiff's Allegations**[3]

This action arises out of Plaintiff's claim that several correctional officers at CEN retaliated against him for reporting the misconduct of one of their colleagues. Plaintiff alleges this group of CEN correctional officers retaliated against him by falsely accusing him of assisting with another inmate's escape attempt and by falsifying a "possession of a deadly weapon" charge against him. Plaintiff alleges he was denied due process in seeking vindication of the disciplinary charge for which he ultimately was convicted, and that he was further harmed by the purported mismanagement of inmate-grievances he filed essentially to collaterally attack that disciplinary conviction.

In June of 2019, Plaintiff was the Chairman of the "Institutional Advisory Committee" at CEN, where he was housed. (Compl. ¶ 18.) In this role, Plaintiff served as a liaison between CEN correctional staff and CEN inmates. (*See id.*) Following a verbal confrontation between an inmate and a correctional officer, neither of whom the Complaint names, Plaintiff met with Captain J. Sais ("Sais") to discuss the incident. (*Id.* ¶ 15.) Sais decided to remove the correctional officer involved in the spat from his post, pending a "threat assessment" to determine whether the correctional officer was in danger. (*Id.* ¶ 17.)

---

[3] These allegations all are taken from the Complaint. (ECF No. 1.) For this § 1915A screening, the Court accepts as true all of Plaintiffs' factual allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Sais asked Plaintiff, "to assist in assessing whether a continued threat [against the correctional officer] existed." (Compl. ¶ 19.) Plaintiff reported to Sais that no such threat existed and that the "only threat" was the correctional officer himself. (*Id.*)

The following day, or shortly thereafter, "Unit Control" informed Plaintiff that Sais wanted to meet with him. (Compl. ¶ 20.) On his way to see Sais, Plaintiff was approached by Lieutenant E. Duarte ("Duarte") and another correctional officer, who is not a named Defendant. (*Id.* ¶¶ 20–22.) During this confrontation, Duarte and his colleague took "aggressive, opposing stance[s]" towards Plaintiff, causing him to feel "threatened and uncomfortable." (*Id.* ¶ 22.) Duarte told Plaintiff he wanted to speak with him about "this threat on staff," apparently referring to the above-referenced verbal affray for which Sais had ordered a threat assessment. (*Id.* ¶ 23.) Plaintiff denied knowing of any threat posed by inmates to any member of the correctional staff, to which Duarte responded, "We all know it takes the ok [sic] of a big homie to assault the staff." (*Id.* ¶ 24.) Plaintiff was later informed that Duarte was telling other correctional officers that Plaintiff had given the "greenlight" to inmates to assault "disrespectful" correctional staff. (*Id.* ¶¶ 26–28.)

Concerned that Duarte was spreading "false rumors" about him and, in doing so, "creating a hostile environment" between CEN correctional officers and inmates, Plaintiff reported Duarte to his superior, Sais. (Compl. ¶ 29.) Although Sais assured Plaintiff he would examine these claims against Duarte, Plaintiff avers Sais failed to undertake a proper investigation into Duarte's misconduct or institute appropriate discipline. (*Id.* ¶ 30.)

Approximately one week after Plaintiff's meeting with Sais, Plaintiff was forcibly removed from his cell by Correctional Officer A. Acuna ("Acuna") and three other unnamed correctional officers. (Compl. ¶ 31.) Acuna brought Plaintiff to a holding cell where Plaintiff was strip searched. (*Id.*) While Plaintiff was in the holding cell, Duarte arrived at the scene. (*Id.* ¶ 34.) Plaintiff asked Duarte why he was being detained and searched. (*Id.*) Duarte essentially told Plaintiff that he was suspected of aiding an inmate's attempted escape from CEN. (*Id.*) Plaintiff vehemently denied the accusation, in response to which Duarte said, "I can make this or anything stick and even put more on it, if you

know what I mean." (*Id.* ¶¶ 35–36).

At approximately the same time as Plaintiff was being searched in a holding cell, Acuna undertook an inventory check of Plaintiff's property. (Compl. ¶ 42.) Acuna reported finding a "knife" or "blade," and filled out a "Rules Violation Report" ("RVR"), citing Plaintiff with "possession of a deadly weapon." (*Id.*) Acuna annexed to the RVR a "grainy black and white photocopy" of a photograph of the purported weapon. (*Id.* ¶¶ 42, 44.) However, Plaintiff avers the object Acuna classified as a "deadly weapon" in the RVR simply is a "leatherman multi-purpose tool," which consists of a pair of pliers, scissors, a bottle opener, a file, a can opener, and screw drivers. (*Id.*) According to Plaintiff, the RVR misclassifies the tool as a "deadly weapon." (*Id.* ¶ 44.)

In light of the accusation that he aided an escape plot and the disciplinary charge of "possession of a deadly weapon" lodged against him, Plaintiff was transferred to Calipatria State Prison ("CAL") where he was placed in Administrative Segregation ("Ad-Seg"). (Compl. ¶¶ 39–41.)

An investigation was launched into the attempted inmate escape from CEN with which Plaintiff was thought by CEN correctional staff to have been involved. (Compl. ¶ 46.) Plaintiff "adamantly refuted" his involvement and offered to take a polygraph test to prove his innocence. (*Id.* ¶¶ 45–46.) In early August of 2019, two CEN correctional officers interviewed Plaintiff at CAL, after which they informed Plaintiff there was insufficient evidence "to charge or hold Plaintiff in [A]d-[S]eg any longer" and that their investigation had concluded. (*Id.* ¶ 46.) Plaintiff filed an inmate grievance against Duarte, accusing him of "falsif[ying] and fabricat[ing] the escape plot in order to retaliate against [P]laintiff for complaining to [Sais] of [Duarte's] misconduct" ("Duarte Grievance"). (Compl. ¶ 50.)

With respect to the disciplinary proceedings instituted against him for possession of a deadly weapon, Plaintiff attended an "RVR hearing" at CAL on July 30, 2019, over which Lieutenant J. Jimenez ("Jimenez") presided. (Compl. ¶¶ 47–49.) At the hearing, Plaintiff challenged Acuna's classification of his leatherman tool as a "deadly weapon" and sought

disclosure of "actual [photographic] evidence" of the purported "knife" or "blade" found in Plaintiff's possession to supplement the "grainy black and white" photocopy that had been appended by Acuna to the RVR. (*Id.*) Jimenez denied that request. (*Id.*) Following the hearing, Plaintiff was convicted of possessing a deadly weapon, sentenced to a 7-month term in the Special Housing Unit ("SHU"), and assessed a "360-day credit loss." (*Id.* ¶ 48.) In September of 2019, Plaintiff filed an inmate grievance essentially accusing Acuna of falsifying a deadly weapon charge against him ("Acuna Grievance"). (*Id.* ¶ 55.)

Plaintiff alleges that Warden R. Madden ("Madden") and Lieutenant D. Loop ("Loop") failed to initiate an investigation into the misconduct alleged in the Duarte Grievance in accordance with "Sections 31140.11–15 and 54160 of the Department Operation Manual," failed to rule on the Duarte Grievance within a reasonable period of time, and arbitrarily denied the Duarte Grievance. (Compl. ¶ 51.) Similarly, Plaintiff alleges that Madden and acting Chief Deputy Warden J. Hill ("Hill") failed to initiate an investigation into the misconduct alleged in the Acuna Grievance, failed to rule on the Acuna Grievance within a reasonable period of time, and arbitrarily denied the Acuna Grievance. (*Id.* ¶ 55.)

In his Complaint, Plaintiff asserts five claims pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 59–111.) Plaintiff claims that: (1) Duarte retaliated against him in violation of the First Amendment ("Count One"); (2) Duarte, Acuna, Sais and Correctional Officers J. Bonilla ("Bonilla") and E. Matus ("Matus") conspired to retaliate against him in violation of the First Amendment ("Count Two"); (3) Jimenez denied him due process in violation of the Fourteenth Amendment and was "deliberately indifferent" to Plaintiff's Eighth Amendment rights because he failed to "weigh actual evidence" at the RVR hearing, leading to a wrongful disciplinary conviction ("Count Three"); (4) Hill and Loop were "deliberately indifferent" to Plaintiff's Eighth Amendment rights by failing to take appropriate action upon the Acuna Grievance or Duarte Grievance, respectively ("Count Four"); and (5) Madden was "deliberately indifferent" to Plaintiff's Eighth Amendment rights because he failed to "supervise," "adequately train," and "protec[t] Plaintiff from"

CEN correctional staff ("Count Five").

Plaintiff seeks compensatory and punitive damages, as well as an "injunction order[ing] Defendants to expunge the disciplinary conviction" from "Plaintiff's institutional records." (Compl. ¶ 112.)

**B. 42 U.S.C. § 1983**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**C. Analysis**

The fundamental question presented here is whether Plaintiff has adequately alleged any Defendant deprived him of a right "secured by the Constitution and laws of the United States." *Tsao*, 698 F.3d at 1138. For the reasons set forth below, Plaintiff adequately alleges Duarte violated his First Amendment rights to satisfy the "low threshold" that applies at the screening stage, but he fails to assert a legally viable claim against any other Defendant.

**1. Count One**

"Within the prison context, a viable claim for First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Purely retaliatory actions taken against a prisoner" for having filed or raised

a grievance against a correctional officer are paradigmatic of the sorts of factual scenarios out of which viable First Amendment retaliation claims arise. *Garcia v. Smith*, No. 10cv1187 AJB (RBB), 2013 WL 12108668, at *4 (S.D. Cal. Aug. 21, 2013); *cf. Sherman v. Aguilar*, No. 10-0290 IEG (PQR), 2012 WL 1107752, at *3 (S.D. Cal. Apr. 2, 2012); *Gonzalez v. Doe*, No. 07-cv-1962-W (PQR), 2010 WL 371881, at *7 (S.D. Cal. July 28, 2010). A First Amendment violation may lie even when the misconduct identified in a prisoner's grievance does not rise to the level of a constitutional violation itself. *See Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).

The Complaint contains a sufficient factual foundation upon which to predicate Plaintiff's First Amendment retaliation claim. The Complaint alleges that Duarte fabricated Plaintiff's involvement in an "escape plot" because Plaintiff had reported to Sais that Duarte was spreading purportedly false rumors about Plaintiff's involvement with threats other inmates directed towards CEN correctional officers, satisfying the first three elements of a retaliation claim in the prison context. (Compl. ¶¶ 60–61); *see Rhodes*, 408 F.3d at 567–58. The Complaint further satisfies the final two requisite elements of a retaliation claim because it alleges (a) that Duarte's accusations chilled Plaintiff's First Amendment rights because it resulted in him being transferred to CAL, where he was housed in Ad-Seg until investigators determined they lacked sufficient evidence to charge Plaintiff, and (b) that Plaintiff's transfer to Ad-Seg lacked any "legitimate correctional" basis because it was predicated upon Duarte's false accusations. (*See id.* ¶ 62); *see Rhodes*, 408 F.3d at 567–68.

Accordingly, the Complaint adequately pleads the essential elements of a First Amendment retaliation claim against Duarte to pass muster of the § 1915 standard.

**2. Count Two**

Plaintiff claims that Acuna, Bonillas, Matus, Duarte, and Sais conspired with one another to further retaliate against Plaintiff by fabricating a "possession of a deadly weapon" charge against him, for which Plaintiff ultimately was convicted and sentenced to a 7-month term in SHU and assessed a "360-day credit loss." (Compl. ¶¶ 70–90.)

To state a claim for conspiracy under section 1983, a plaintiff must allege facts sufficient to show the exercise of an agreement or meeting of the minds between the alleged conspirators to violate the plaintiff's constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy" *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quotation marks and citation omitted). A plaintiff need not allege each participant in the conspiracy "kn[e]w the exact details of the plan" to be held liable, "but each participant must [be alleged to] at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quotation marks omitted). Additionally, Plaintiff must allege that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974).

"Where 'assertions' of conspiracy 'lack any factual foundation,' they amount to merely conclusory allegations' and are insufficient to state a claim." *Rosario v. City of New York*, 18 Civ. 4023 (LGS), 2019 WL 4450685, at *7 (S.D.N.Y. Sept. 16, 2019) (quoting *Jackson v. Cty. of Rockland*, 450 F. App'x 15, 18 (2d Cir. 2011) (summary order)); *see also Mosher v. Saalfield*, 589 F.2d 438, 431 (9th Cir. 1978) ("[M]ore than vague conclusory allegations are required to state a [conspiracy] claim.").

Here, the Complaint sets forth a single factual allegation in support of Plaintiff's conspiracy claim: that Acuna, Bonillas, Matus, Duarte, and Sais "were all present in the gym and program office" just before Acuna conducted an inventory search of Plaintiff's possessions that led to Acuna's discovery of a purported "knife" or blade" at the heart of Plaintiff's administrative conviction. (Compl. ¶ 44.) In essence, Plaintiff asks the Court to infer from the fact these Defendants congregated with one another before he was purportedly framed for possessing a deadly weapon that they entered into an "agreement" or "meeting of the minds" to retaliate against Plaintiff. But drawing an inference of conspiracy from this single allegation would require the sort of speculation and guesswork this Court is forbidden to undertake, including at the § 1915 stage. The Complaint is devoid

of any "factual foundation" for the notion that Acuna, Bonillas, Duarte, and Sais "had an agreement or meeting of the minds" to retaliate against him; Plaintiff does not allege what "specific acts" Acuna, Bonillas, Matus, Duarte, or Sais undertook to "carr[y] the conspiracy into effect how those acts fit into the conspiracy, and how the injury to [Plaintiff] was foreseeable therefrom.'" *Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1271–72 (E.D. Cal. 2009) (quoting *Graves v. United States*, 961 F. Supp. 314 (D.D.C. 1997)). Because the Complaint does not contain this sort of factual information, Plaintiff may not proceed with Count Two.

Additionally, because Plaintiff's claim that Acuna, Bonillas, Matus, Duarte, and Sais fabricated the initial "possession of a deadly weapon" charge against him would necessarily imply the invalidity of his subsequent conviction, seven-month sentence, and 360-day credit loss, Count Two is not legally cognizable for the reasons stated below, at *supra* Sec. III.C.3.a. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding that where a 42 U.S.C. § 1983 action, if meritorious, "would necessarily imply the invalidity of his conviction or sentence," a plaintiff first "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254").

Accordingly, the Court **DISMISSES** Plaintiff's Count Two for failing to state a claim upon which relief may be granted.

**3. Counts Three and Four**

Counts Three and Four of the Complaint are predicated upon similar theories of wrongdoing. Plaintiff alleges that Jimenez, Hill, Loop violated his Eighth Amendment right to be free from "cruel and unusual punishment" through their "deliberate indifference": Jimenez in the way in which he handled Plaintiff's RVR hearing (Count Three) and Hill and Loop in the way in which they responded to the Acuna and Duarte Grievances, respectively (Count Four). Plaintiff further alleges that Jimenez's handling of the RVR hearing simultaneously violated his Fourteenth Amendment due process right

(Count Three). These claims are felled for at least two independently fatal reasons.

**a. *Heck* Bar**

Plaintiff seeks money damages arising from the Eighth and Fourteenth Amendment violations lodged against Jimenez, Hill, and Loop. (Compl. ¶ 112.) But Plaintiff's claims as currently alleged present a procedural bar.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on *circumstances* of confinement may be presented in a § 1983 action." *Id.* (emphasis added and internal citation omitted). A prisoner's claims sound in habeas corpus if they challenge the fact or duration of his conviction or sentence. *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 645 (2017); *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003).

In *Heck v. Humphrey*, the Supreme Court held that a section 1983 claim cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 486–87. Accordingly, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief) [and] no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). *Heck* requires the plaintiff in a § 1983 action "first . . . to prove that his conviction had been invalidated in some way." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (citing *Heck*, 512 U.S. at 486). "This favorable-termination requirement, the Court explained, applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.* (quoting *Heck*, 512 U.S. at 487).

*Heck*'s bar applies in the prison disciplinary context when the "defect complained

of by [a plaintiff] would, if established, necessarily imply the invalidity of the deprivation of [his] good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002), and if the restoration of those credits "necessarily" would "affect the duration of time to be served." *Muhammed*, 540 U.S. at 754; *see also Nettles*, 830 F.3d at 929 n.4 ("*Heck* applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.'" (citations omitted)); *Ramirez*, 334 F.3d at 856 ("[T]he applicability of [*Heck*'s] favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.").

Here, a judgment in Plaintiff's favor would necessarily imply the invalidity of his disciplinary conviction and his subsequent credit loss. *See Edwards*, 520 U.S. at 648 (finding prisoner's claims for declaratory relief and money damages "based on allegations of deceit and bias on the part of the decisionmaker . . . necessarily imply the invalidity of the punishment imposed, [and are] not cognizable under § 1983."). Because the Complaint fails to allege that Plaintiff's disciplinary conviction has already been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," he cannot proceed with his claims against Jimenez, Hill, or Loop. *Heck*, 512 U.S. at 487.

Therefore, the Court must dismiss Counts Three and Four for failure to state a cognizable claim.

**b. Prisoner-Grievance Bar**

Furthermore, to the extent Plaintiff's seeks to challenge the CEN procedures deployed to administer his RVR hearing or to process his Duarte and Acuna Grievances as inconsistent with due process under the Fourteenth Amendment, those claims against Jimenez, Hill, and Loop are not legally cognizable.

An official's allegedly improper processing of a prisoner's grievance or appeal,

without more, does not serve as a sufficient basis for section 1983 liability. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. Cal. Dep't of Corrs. and Rehab.*, 615 F. App'x. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on improper "processing and handling of […] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Shallowhorn v. Molina*, 572 F. App'x. 545, 547 (9th Cir. 2014) (district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Daniels v. Aguilera*, No. 2:16-CV-00996-JAM-CKD P, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), *report and recommendation adopted sub nom. Daniels v. Aguillera*, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances."). Simply "'[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.'" *Ellington v. Clark*, 2010 WL 3001427, at *2 (E.D. Cal. Jul. 29, 2010) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

Accordingly, for this reason, too, Counts Three and Four also fail.

**4. Count Five**

Finally, the Complaint appears to seek to hold Warden Madden liable for alleged constitutional violations committed by his subordinates under a theory of *respondeat superior* liability. (Compl. ¶ 102 ("Defendant Warden Madden violated Plaintiff's right to be free from cruel and unusual punishment guaranteed to the Plaintiff by the Eighth Amendment . . . by his failure to adequately train custody staff in not falsifying and fabricating information and from [sic] not protecting Plaintiff from the retaliation and conspiricy [sic] by custody staff, by his failure to supervise the other defendants and his

failure to investigate the incidents, staff complaints or discipline the other Defendants[.]").)

There is no *respondeat superior* liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, [a plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Cmty. Redevelopment Agency of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) (even *pro se* plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" to state a claim). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). Put differently, to establish liability against a supervisory defendant, a complaint must adequately allege that the official was personally involved in the constitutional deprivations at issue *or* "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).

The Complaint, here, does neither. Rather, it casts Madden's purported wrongdoing merely in terms of generalities and with boilerplate language. (*See* Compl. ¶ 101.) Plaintiff must proffer facts that enable this Court to infer either that Madden was involved in the constitutional violations alleged in Counts One through Four *or* that a causal nexus exists between Madden's failure to supervise or train and Plaintiff's purported constitutional injuries.

Accordingly, the Court also dismisses Count Five.

* * * *

While Counts Two through Five warrant dismissal, it cannot be said at this time "it is absolutely clear" the deficiencies that fell those claims cannot "be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d

1202, 1212 (9th Cir. 2012)). Accordingly, the Court **GRANTS** Plaintiff leave to amend those Counts. *See id.*

**III. Motion for Appointment of Counsel**

Finally, Plaintiff requests appointment of counsel because he "is unable to afford counsel," the "issues in this case are complex," and he has limited access to the prison's law library. (Mot. for Appointment, ECF No. 3.) There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Exceptional circumstances exist where there is a cumulative showing of both a likelihood of success on the merits and an inability of the *pro se* litigant to articulate his claims in light of their legal complexity. *See Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

While a *pro se* litigant "may not have vast resources or legal training," these are simply among the commonly shared "types of difficulties encountered by many pro se litigants." *Wells v. Washington State Dep't of Corr.*, No. C13-234 RJB/KLS, 2013 WL 4009076, at *1 (W.D. Wash. Aug. 5, 2013). Here, nothing in Plaintiff's Complaint suggests he is incapable of articulating the factual basis for his claims which appear "relatively straightforward." *Harrington*, 785 F.3d at 1309. In fact, the Court has found, based on its initial screening of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), that he has stated a plausible First Amendment retaliation claim.

In addition, while Plaintiff may have sufficiently *pleaded* a plausible First Amendment claim at this preliminary stage of the proceedings, it is too soon to tell whether Plaintiff is likely to succeed on the merits. *Harrington*, 785 F.3d at 1309; *Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, but did not show

likelihood of succeed on the merits); *see also Dickey v. Strayhorn*, No. 3:17-cv-00546-JLS-JLB, 2017 WL 3118797, at *1 (S.D. Cal. July 21, 2017), *reconsideration denied*, 2017 WL 4271975 at *1 (S.D. Cal. Sept. 26, 2017) ("To demonstrate that he has a likelihood of success at trial, Plaintiff must do more than merely allege that one of his constitutional rights was violated. He must provide evidence to the effect that he has a likelihood of success on the merits of his allegations."); *Torbert v. Gore*, No. 3:14-cv-02991-BEN-NLS, 2016 WL 1399230, at *1 (S.D. Cal. Apr. 8, 2016) ("A plaintiff that provides no evidence of his likelihood of success at trial fails to satisfy the first factor of the [exceptional circumstances] test.").

Accordingly, the Court finds no "exceptional circumstances" exist at this preliminary stage of the case and **DENIES** without prejudice Plaintiff's Motion to Appoint Counsel. (ECF No. 3.)

## IV. CONCLUSION

Based on the foregoing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2) **DIRECTS** the Secretary of the CDCR, or their designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing $350.00 from his inmate trust account. ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DENIES** without prejudice Plaintiff's Motion to Appoint Counsel (ECF No. 3).

5) **DISMISSES** without prejudice Counts Two, Three, Four, and Five, *sua sponte*, for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

6) **GRANTS** Plaintiff leave to either: (1) file a Notice of Intent to proceed with

his First Amendment claim against Duarte only (Count One); or (2) file an Amended Complaint correcting all the deficiencies identified by the Court in this Order. Plaintiff must file either a Notice of Intent or an Amended Complaint **by no later than September 23, 2022**.

If Plaintiff chooses to proceed with Count One only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Duarte and will dismiss the remaining claims and Defendants. If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, his Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* Civ. L.R. 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Plaintiff's amended pleading must be titled "First Amended Complaint," contain S.D. Cal. Civil Case No. 22-cv-0446-BAS-WVG in its caption, and comply both with Federal Rule of Civil Procedure 8 and Southern District of California Local Rule 8.2.a. In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use and convenience should he choose to amend.

**IT IS SO ORDERED**

**DATED: August 4, 2022**

**Hon. Cynthia Bashant**
**United States District Judge**