**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK J. FERNANDEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>E. DUARTE,<br><br>                              Defendant. | Case No.: 3:22-cv-00446-BAS-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL DISCOVERY**<br><br>**[Doc. No. 81]** |

Before the Court is Plaintiff Frank J. Fernandez's ("Plaintiff") Motion to Compel Discovery. Doc. No. 81 ("Motion"). Defendant E. Duarte ("Defendant") timely opposed the Motion. Doc. No. 83 ("Opposition"). Defendant also filed a privilege log and lodged relevant documents for the Court's *in camera* review. *See* Doc. Nos. 100, 103, 126, 132. Following the Court's *in camera* review, and for the reasons discussed below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.    <u>Underlying Action</u>

Plaintiff is a California state prisoner proceeding pro se. On September 30, 2022, Plaintiff filed a First Amended Complaint against Defendant and other prison employees. Doc. No. 8 ("FAC"). Therein, Plaintiff alleged various civil rights violations pursuant to

42 U.S.C. § 1983. *Id.* at 2. Following screening under 28 U.S.C. §1915A and §1915(e)(2)(B), the Court dismissed all defendants and claims except a First Amendment retaliation claim against Defendant. Doc. No. 9.

In this surviving claim, Plaintiff alleges that Defendant spread a false rumor that Plaintiff authorized, or gave the "green light," to assault prison staff. Doc. No. 8 at 7, 11. Plaintiff states that a verbal confrontation between himself, Defendant, and three other officers occurred in mid-June 2019, during which Defendant suggested that Plaintiff gave other inmates the "green light." *Id.* at 4, 10. Plaintiff further alleges that after this confrontation, he verbally complained to Captain Sais about Defendant spreading this rumor, and in retaliation, Defendant purportedly fabricated an escape plot involving Plaintiff. *Id.* at 11–12. Specifically, on June 24, 2019, the Investigative Services Unit obtained confidential information that Plaintiff was involved in a conspiracy to escape from Centinela State Prison. Doc. No. 8-1 at 8. Pending an investigation, and after an officer discovered a 4-inch Leatherman Wingman Multipurpose tool in Plaintiff's boot, Plaintiff was placed in administrative segregation and subsequently transferred to another prison. *Id.* Plaintiff contends that his transfer and placement in administrative segregation were due to the fabricated escape plot. Doc. No. 8 at 11–12. Defendant denies Plaintiff's account of events. Doc. No. 18 at 4–5.

Following Defendant's Answer, the Court held a Case Management Conference and issued a Scheduling Order regulating fact discovery. Doc. Nos. 32, 33. The Court granted multiple requests to extend fact discovery, allotting nearly twelve full months for fact discovery. *See* Doc. Nos. 58, 73. During this time, Plaintiff raised several discovery disputes with the Court and the Court subsequently ordered the parties to meet, confer, and otherwise comply with mandatory discovery dispute procedures. *See, e.g.*, Doc. Nos. 43, 53, 58, 65, 67. Having failed to resolve discovery disputes through these procedures, the Court granted Plaintiff leave to file the instant Motion. Doc. No. 78.

**B.    Disputed Requests for Production of Documents**

Plaintiff contends that Defendant "denies and objects to all of" his requests for production of documents ("RFP"). Doc. No. 81 at 10. Plaintiff served an initial set of 15 RFPs on November 6, 2023 ("Set One"). Doc. No. 83 at 19–24. Plaintiff subsequently served seven additional RFPs on November 17, 2023 ("Set Two"). *Id.* at 47–50.

On March 1, 2024, Defendant responded to Set One, asserting objections and agreeing to produce non-confidential, non-privileged documents in response to RFP Nos. 1, 2, 7, 8, 9, 10, 11, and 15. *Id.* at 30–44. On the same date, Defendant responded to Set Two, again asserting various objections and agreeing to produce non-confidential, non-privileged documents in response to RFP Nos. 1, 2, 4, 6, and 7. *Id.* at 56–63. Despite objecting to each RFP, Defendant agreed to produce documents responsive to 13 RFPs (out of 22 combined RFPs).

As to Set One, the Motion identifies all 15 RFPs, suggesting all 15 are in dispute. However, Plaintiff advances arguments only as to RFP Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, and 12. *See* Doc. No. 81 at 12–19 (Plaintiff does not raise any arguments as to RFP Nos. 3, 13–15). Thus, the Court interprets the Motion as raising a dispute only as to RFP Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, and 12 in Set One. Regarding Set Two, the Motion advances arguments as to RFP Nos. 1, 3, 4, 5 and 6 and confirms that Plaintiff is withdrawing RFP No. 7. *Id.* at 19–22. Thus, the Court interprets the Motion as raising a dispute only as to RFPs 1 and 3–6 in Set Two. In total, Plaintiff disputes Defendant's responses to 16 of the 22 combined RFPs propounded by Plaintiff.[1]

**C.    Documents at Issue**

In the privilege logs produced to Plaintiff (collectively, the "Privilege Log"), Defendant identifies 25 sets of responsive documents withheld or redacted. Doc. No. 100

---

[1]    Defendant references a third set of RFPs in a privilege log produced to Plaintiff. *See* Doc. No. 100 at 7 (referring to "Set 3"). However, neither party identifies nor discusses a third set of RFPs propounded by Plaintiff.

3

at 4–7.[2] In the Privilege Log, Defendant also redacted the first name and email addresses of parties that appear on email communications. *Id.* Based on the Privilege Log, Defendant asserts the official information privilege, third-party privacy, the deliberative process privilege, or some combination thereof as a basis for withholding/redacting documents. *Id.*

As to Set One, Defendant withheld or redacted documents in response to RFP Nos. 4, 5, 6, 8, 9, and 16. Doc. No. 100 at 4–7. As to Set Two, Defendant withheld or redacted documents in response to RFP Nos. 1 and 2. *Id.* The Privilege Log does not show that Defendant withheld or redacted any responsive materials to any other RFPs. *See generally* Doc. No. 100. Therefore, a disconnect exists between the RFPs purportedly in dispute, based on the Motion, and the documents/information withheld, as reflected in the Privilege Log.[3]

**D.    Summary of the Parties' Discovery Dispute**

The omnibus privilege log and documents subsequently prepared and lodged in response to the Court's inquiries shows that Defendant did a poor job of identifying the information withheld in response to Plaintiff's RFPs. The parties' disjointed briefing compounded the problem. Still, based on a review of the Motion, Defendant's Opposition (including attachments), the Privilege Log, and the documents lodged for *in camera* review, the following chart represents the Court's understanding of the RFPs and documents at issue:

---

[2]    Defendant provided what appear to be two, separate privilege logs, which the Court treats as one, comprehensive privilege log.

[3]    Defendant lodged for *in camera* review (i) an unredacted version of documents withheld based on the official information privilege; and (ii) a redacted version of the same documents that were provided to Plaintiff. *See* Doc. No. 103. At the Court's request, Defendant lodged an updated version of all discovery materials withheld from Plaintiff. *See* Doc. Nos. 126, 132. Defendant also prepared and served an omnibus privilege log to clarify the bates-numbering for documents lodged for *in camera* review. Doc. No. 132 at 2.

| Request | Disputed/Not Disputed (per Motion) | Responsive Documents/Information Withheld (per Privilege Log)? |
|---|---|---|
| Set One - RFP No. 1 | Disputed | None |
| Set One - RFP No. 2 | Disputed | None |
| Set One - RFP No. 3 | Not Disputed | None |
| Set One - RFP No. 4 | Disputed | Yes |
| Set One - RFP No. 5 | Disputed | Yes |
| Set One - RFP No. 6 | Disputed | Yes |
| Set One - RFP No. 7 | Disputed | None |
| Set One - RFP No. 8 | Disputed | Yes |
| Set One - RFP No. 9 | Disputed | Yes |
| Set One - RFP No. 10 | Disputed | None |
| Set One - RFP No. 11 | Disputed | None |
| Set One - RFP No. 12 | Disputed | None |
| Set One - RFP No. 13 | Not Disputed | None |
| Set One - RFP No. 14 | Not Disputed | None |
| Set One - RFP No. 15 | Not Disputed | None |
| Set One - RFP No. 16 | Not Disputed | Yes |
| Set Two - RFP No. 1 | Disputed | Yes |
| Set Two - RFP No. 2 | Not Disputed | Yes |
| Set Two - RFP No. 3 | Disputed | None |
| Set Two - RFP No. 4 | Disputed | None |
| Set Two - RFP No. 5 | Disputed | None |
| Set Two - RFP No. 6 | Disputed | None |
| Set Two - RFP No. 7 | Not Disputed | None |

5

### E.    Declaration Supporting Claim of Official Information Privilege

Defendant submits the sworn declaration of N. Telles, the Litigation Coordinator at Centinela State Prison ("Telles"), in support of Defendant's assertion of the official information privilege. Doc. No. 83 at 65–74 ("Telles Decl."). Without specifying the applicability of the privilege to individual documents, Telles discusses the "numerous ways in which the disclosure of confidential information would seriously threaten and undermine the safety and security" of California Department of Corrections and Rehabilitation ("CDCR") "institutions, staff, and inmates." *Id.* at 66 (¶ 2). Telles raises these issues in connection with the following RFPs: Set One, RFP Nos. 4, 6–9, and 12–14; and Set Two, RFP Nos. 1–3, 5, and 7. *Id.* at 66–67 (¶ 3).

First, Telles declares that disclosure of "responsive personnel material" would reveal "investigative-technique information" that could assist Plaintiff or other inmates in fabricating complaints against correctional officers. *Id.* at 69 (¶¶ 11–12). Moreover, the disclosure of staff personnel information is strictly prohibited to protect staff and their families from harm, avoid impeding staff members' investigative efforts, and prevent inmates from being pressured into disclosing staff members' private information. *Id.* at 69–70 (¶ 13). Telles further explains that "responsive personnel material may contain information about inmates other than Plaintiff," which could result in Plaintiff or other inmates becoming "targeted by others for harassment, assaults, and even death." *Id.* (¶ 14). Telles also represents that the California Code of Regulations ("CCR") prohibits inmates from accessing other inmates' case records file and unit health records material. *Id.* (¶ 15) (citing CCR, title 15, section 3370(b)).

In addition, Telles indicates that the CCR protects daily post assignments from disclosure because "they provide information about procedures and techniques used during prison emergencies and when investigating criminal activities." *Id.* at 71 (¶ 17) (citing CCR, title 15, section 3321(a)(1)–(2)). Similarly, training documents identify "procedures and policies that if known to an inmate could be used to circumvent security and cause risk to other inmates and CDCR personnel." *Id.* Telles further declares that videos from security

6

equipment, while non-existent in this case, would allow inmates to circumvent the facility's security measures. *Id.* (¶ 18). Lastly, he explains that factors unique to Plaintiff, including his affiliation with the Mexican Mafia and criminal history both before and during incarceration, exacerbate the significant security concerns present for CDCR personnel and other inmates. *Id.* at 72 (¶ 22). Telles concludes that even if a protective order was in place, the threat from disclosing material responsive to certain RFPs would pose substantial risk of harm to CDCR personnel and other inmates. *Id.* at 73–74 (¶¶ 24–30).

## II.    LEGAL STANDARD

### A.    <u>Motion to Compel</u>

Pursuant to Federal Rule of Civil Procedure 34, a party may serve on another party a request for production of documents, electronically stored information, or tangible things within the scope of Rule 26(b).[4] Fed. R. Civ. P. 34(a)(1)(A). In turn, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevance under Rule 26(b) is broadly defined. *In re Bank of Am. Cal. Unemployment Bens. Litig.*, No. 21MD2992-GPC(MSB), 2024 U.S. Dist. LEXIS 111988, at *20 (S.D. Cal. June 25, 2024); *Rogers v. Giurbino*, 288 F.R.D. 469, 479 (S.D. Cal. 2012) (relevance "is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case").

In evaluating proportionality, the Court considers the following factors: (1) "importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be

---

[4]    Unless otherwise indicated, all references to a "Rule" are to the Federal Rules of Civil Procedure.

discoverable." *Id.* The Court, however, may limit discovery if: (i) it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (ii) the party who seeks discovery "has had ample opportunity to obtain the information by discovery;" or (iii) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "Unsupported assertions that discovery requests are overbroad, burdensome, or disproportionate are insufficient" to resist discovery. *Soler v. Cty. of San Diego*, No. 14cv2470-MMA (RBB), 2016 U.S. Dist. LEXIS 197050, at *22 (S.D. Cal. July 18, 2016).

Where a party fails to produce documents requested under Rule 34, the requesting party may move to compel discovery. Fed. R. Civ. P. 37(a)(3)(B)(iv) ("A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents . . . as requested under Rule 34."). The party seeking to compel discovery bears the burden of demonstrating relevance, proportionality, and other Rule 26 requirements. *In re Bank of Am. Cal. Unemployment Bens. Litig.*, 2024 U.S. Dist. LEXIS 111988, at *21. Thereafter, "[t]he party resisting discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.* (internal quotations omitted); *see also SmarterSwipe, Inc. v. Navarrete*, No. 2:24-cv-00299-CDS-MDC, 2025 U.S. Dist. LEXIS 12328, at *5 (D. Nev. Jan. 22, 2025). The opposing party carries a "heavy burden of showing why discovery was denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## B. Official Information Privilege

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing *Kerr v. United States Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 198 (9th Cir. 1975), aff'd 426 U.S. 394 (1976)). In analyzing the privilege, the Court "must balance the government's interest in protecting official information from disclosure against the plaintiff's need for the information." *Rogers*, 288 F.R.D. at 481 (internal quotations and citations omitted). "This balancing test is moderately pre-weighted in favor of disclosure" in civil rights cases. *Id.* (citing *Kelly v.*

*City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987)). The party asserting the privilege has the initial burden of proving the applicability of the privilege. *See Kelly*, 114 F.R.D. 653, 669–671; *see also Hampton v. City of San Diego*, 147 F.R.D. 227, 230 (S.D. Cal. 1993).

Before the Court balances the parties' interests, "the party asserting the privilege . . . must properly invoke the privilege by making a substantial threshold showing." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995); *see also Rogers*, 288 F.R.D. at 481; *J.A.M. v. United States*, No. 22-cv-380-GPC-BGS, 2023 U.S. Dist. LEXIS 75412, at *9 (S.D. Cal. Apr. 28, 2023). "[T]o fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Soto*, 162 F.R.D. at 613. The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests; and (5) a projection of how much harm would be done to the threatened interests if disclosure were made. *Id.*; *see also Moore v. Duran*, No. 23-cv-194-GPC-DDL, 2024 U.S. Dist. LEXIS 81429, at *6 (S.D. Cal. May 3, 2024). "If the nondisclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an in camera review of the material and balance[s] each party's interests." *Bryant v. Armstrong*, 285 F.R.D. 596, 605 (S.D. Cal. 2012).

**C.    <u>Third-Party Privacy</u>**

"Federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Stuart v. Cnty. of Riverside*, No. 5:22-cv-701-SPG (MAR), 2023 U.S. Dist. LEXIS 132737, at *5 (C.D. Cal June 15, 2023) (quoting

*Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005)). "[R]esolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted." *Id.* "Third party privacy concerns may be protected by redacting confidential information." *Casteneda v. Quiring*, No. 2:21-cv-2196 DAD KJN P, 2023 U.S. Dist. LEXIS 179977, at *3 (E.D. Cal. Oct. 5, 2023); *see also Wells v. Gonzales*, No. 1:17-cv-01240-DAD-EPG (PC), 2019 U.S. Dist. LEXIS 146745, at *24 (E.D. Cal. Aug. 27, 2019) (finding that redaction of full names and disclosure of only first and last initials adequately protected third-parties' privacy interests).

## III.  DISCUSSION

The Court addresses each disputed RFP in sequential order.[5]

### A.  Plaintiff's Requests for Production of Documents, Set One

#### 1.  RFP No. 1

In RFP No. 1, Plaintiff seeks the "Duty statement of defendant E. Duarte insofar as they pertain to ISU investigations." Doc. No. 83 at 21. Defendant lodged several objections but, in response, agreed to produce a "non-confidential duty statement." *See id.* at 31. Moreover, Defendant does not indicate he is withholding any documents responsive to RFP No. 1. *See generally* Doc. No. 100. Accordingly, to the extent he has not already done so, Defendant **SHALL** produce the "non-confidential duty statement" in response to Set One, RFP No. 1.

#### 2.  RFP No. 2

In RFP No. 2, Plaintiff seeks "Policy statements of Investigative Services Unit (ISU) investigations and duties." Doc. No. 83 at 22. Plaintiff explains that RFP No. 2 does not seek personnel records, but rather "documents pertaining to particular duties, job and post positions and assaignments [sic] directly associated to defendant's position as being part

---

[5] In the Privilege Log, Defendant asserts the deliberative process privilege in response to Set One, RFP Nos. 6, 8, 9 and Set Two, RFP Nos. 1, 2. Doc. No. 100 at 4–7. However, Defendant does not advance any arguments to support this privilege. *See generally* Doc. No. 83. Therefore, the Court considers the deliberative process privilege waived.

of ISU/STGI." Doc. No. 81 at 12–13. Defendant lodged several objections but, in response, agreed to produce "non-confidential duty statements" in response to RFP No. 2. *See* Doc. 83 at 32. Moreover, Defendant does not indicate he is withholding any documents responsive to RFP No. 2. *See generally* Doc. No. 100. Given the clarification provided by Plaintiff, the Court finds that the production of duty statements for ISU personnel is responsive to RFP No. 2. Accordingly, to the extent he has not already done so, Defendant **SHALL** produce any "non-confidential duty statements" in response to Set One, RFP No. 2.

### 3.    <u>RFP No. 4</u>

In RFP No. 4, Plaintiff seeks "any and all incident reports, completed investigations, memorandum and other written material regarding the threat assessment that occurred on or about the second week of June 2019, between officer Trevino and inmate M. Valencia CDCR# F-02247." Doc. No. 83 at 22. As part of this RFP, Plaintiff seeks the "Daily Activity Report," "Daily Program Status Report," the "Plan of Opperation/Staff [sic] & Inmate Notification," and the "Threat Assessment" investigation report. Doc. No. 81 at 13. He contends these documents are relevant to show that a confrontation between Officer Trevino and inmate M. Valencia "did occur, a fact defendant denies," and that Defendant interviewed Plaintiff as part of this investigation. *Id.*

Defendant lodged several objections in response to RFP No. 4, including relevance and the official information privilege, and stated that he will not produce any documents. Doc. No. 83 at 34. Based on the official information privilege, Defendant withheld three responsive sets of documents, bates-numbered AG00000419–441, AG00000395–412, and AG00000413–418. Doc. No. 100 at 7. Defendant contends that his role, if any, in a different investigation involving a different inmate is not relevant to the remaining claim and does not implicate any First Amendment conduct. Doc. No. 83 at 10. The Court agrees.

Plaintiff has one surviving claim: a First Amendment retaliation claim against Defendant. *See* Doc. Nos. 8 at 2, 9 at 12–13. Specifically, Plaintiff contends that Defendant fabricated an escape plot involving Plaintiff in retaliation for Plaintiff's verbal complaint

to Captain Sais regarding Defendant. Doc. No. 8 at 11–12. Plaintiff must prove five elements to support this claim: (1) that Defendant took some adverse action against Plaintiff, *i.e.*, fabricated an escape plot involving Plaintiff, (2) because of (3) Plaintiff's protected conduct, *i.e.*, his verbal complaint to Captain Sais regarding Defendant spreading a false rumor, and that this action (4) chilled Plaintiff's exercise of his First Amendment rights, and (5) Defendant's action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567–568 (9th Cir. 2005) (internal citations and quotations omitted). Thus, any discovery must be relevant to proving these elements or a defense asserted by Defendant.

An alleged incident between Officer Trevino and inmate M. Valencia (both non-parties) and any subsequent investigation of that incident have no bearing on whether Plaintiff made a verbal complaint about Defendant for purportedly spreading a false rumor about Plaintiff (*i.e.*, the protected conduct), or whether that complaint caused Defendant to retaliate against Plaintiff by fabricating an escape plot (*i.e.*, the alleged retaliation). Accordingly, the Court finds that the documents requested in RFP No. 4 are not relevant and **SUSTAINS** Defendant's relevance objection to Set One, RFP No. 4.

Based on an *in camera* review, the Court further finds that the documents withheld in response to RFP No. 4 are also protected from disclosure by the official information privilege. The documents consist of "Program Status Report" forms that include narrative summaries of investigations following reports of possible threats against correctional facility staff and official CDCR instructions and guidance concerning how to investigate threats made against correctional facility staff. The documents specify the steps to investigate such threats, their timing, results, and follow-on actions required by policy.

As an initial matter, the Court finds that the Telles Declaration meets the threshold requirement to invoke the official information privilege. Telles is a litigation coordinator, a responsible official, and he identifies materials collected in response to Plaintiff's RFPs. Telles Decl. at 65–67 (¶¶ 1–5). He further verifies that CDCR maintains the materials confidential and attests to personally reviewing the materials. *Id.* at 67–68 (¶¶ 5, 7–10).

12

Telles also identifies specific security risks or safety concerns implicated by disclosure of the materials, describes why a protective order is inadequate to mitigate those risks and concerns, and clarifies the scope of harm that disclosure of said materials would create. *Id.* at 69–74 (¶¶ 11–30).

The Court further finds that the documents at issue contain specific information regarding investigative techniques and procedures that are law enforcement sensitive, and if revealed to inmates, would jeopardize the safety and security of CDCR staff. *See* Telles Decl. at 69–71 (¶¶ 11–15). Moreover, based on Telles' representations, the Court agrees that a protective order would not alleviate the safety and security concerns created by disclosing such documents to Plaintiff, who is a validated member of the Mexican Mafia and has been involved in Mexican Mafia-related incidents during his incarceration. *See id.* at 68 (¶ 6). Furthermore, the information withheld does not involve Plaintiff and is not relevant to Plaintiff's First Amendment claim. Therefore, the Court **SUSTAINS** Defendant's objection based on the official information privilege.

### 4. **RFP No. 5**

In RFP No. 5, Plaintiff seeks "Centinela's C-Facility Program Office staff sign-in logs" for Defendant and three other ISU officers as they signed in to enter the "C-Facility yard, from the first week of June 2019 through June 24, 2019." Doc. No. 83 at 22. Plaintiff claims these documents will show that Defendant and three other officers signed into C-Facility yard, and shortly after Defendant paged Plaintiff to the "program office," as reflected in a "unit 3 control log" (addressed below in RFP No. 10). Doc. No. 81 at 14. Per Plaintiff, "on this day defendant and three other officers confronted (intercepted) plaintiff outside of unit 3 where this first confrontation occurred that led to defendant's misconduct towards plaintiff . . . then plaintiff's reporting a misconduct complaint against defendant . . . ." *Id.* In essence, Plaintiff seeks documents to show he and Defendant were in the same place at or around the same time on some unspecified date in June 2019.

Defendant lodged several objections in response to RFP No. 5, including relevance, and stated that he will not produce any documents. Doc. No. 83 at 34–35. Based on third-

13

party privacy, Defendant redacted three responsive sets of documents, bates-numbered AG00000066–75. Doc. No. 100 at 5. Defendant contends that an alleged verbal confrontation between Plaintiff and Defendant sometime in June 2019, preceding Plaintiff's verbal complaint, is irrelevant because the protected conduct at issue involves Plaintiff's verbal complaint to Defendant's commanding officer, *i.e.*, Captain Sais. Doc. No. 83 at 11–12. There is no allegation that Plaintiff engaged in any protected conduct as part of the purported confrontation between Plaintiff and Defendant, and as such, whether Defendant and Plaintiff were in the same place at the same time is irrelevant. Doc. No. 8 at 4, 10–19. The Court agrees.

Whether a confrontation occurred between Plaintiff and Defendant, *prior to Plaintiff's verbal complaint*, has no bearing on whether Plaintiff suffered retaliation because of the complaint to Defendant's commanding officer. Nor do sign-in logs for June 2019 demonstrate that any confrontation occurred, at best they show only that Defendant entered the C-Facility yard on certain dates. Furthermore, Plaintiff offers no argument to support the production of a month's worth of sign-in logs. Therefore, for the same reasons articulated above regarding RFP No. 4, the Court finds that the documents requested in RFP No. 5 are not relevant and **SUSTAINS** Defendant's relevance objection to Set One, RFP No. 5.

To the extent Defendant produced redacted responsive documents, based on an *in camera* review, the Court further finds that the redactions are properly limited to third-party information that reveals the internal movements of correctional officers. The redacted documents consist of ten pages of sign-in sheets, dated June 1, 2019 and June 2, 2019, and labeled "2W Facility C Sign in Sheet." The documents identify officers signing in by rank, post description, personnel number, start time, end time, and conclude with each officer's signature. Defendant redacted each officer's name and personnel number, except for Defendant's name. Telles sufficiently articulates the security and safety concerns involved in disclosing correctional officers' private information as well as operational information. Telles Decl. at 69–70 (¶ 13). Therefore, the Court **SUSTAINS** Defendant's third-party

14

privacy objections to RFP No. 5. To the extent Defendant produced documents bates-numbered AG00000066–75 with the redactions lodged with the Court, those redactions may remain in place.

### 5.   **RFP No. 6**

In RFP No. 6, Plaintiff seeks "[a]ny and all documents including investigations" relating to "an alleged escape plot of June/July 2018 on B-Facility at Centinela, involving inmates Garcia and Gonzelez [sic]," which are referenced in the August 19, 2019 "Confidential Information Disclosures Form." Doc. No. 83 at 22. Plaintiff claims these materials will show that Plaintiff was not in communication with these inmates or "implicated," and Defendant "rehashed [this prior] alleged escape plot to get rid of plaintiff." Doc. No. 81 at 16. Plaintiff only seeks *in camera* review. *Id.*

Defendant lodged several objections in response to RFP No. 6, including relevance and the official information privilege, and stated that he will not produce any documents. Doc. No. 83 at 35–36. Based on the official information privilege and third-party privacy, Defendant also withheld a set of documents, bates-numbered AG00000165–174. Doc. No. 83 at 14; Doc. No. 100 at 6. Defendant contends these documents are not relevant because the investigation concerns a different escape plot that does not involve Plaintiff or Defendant. Doc. No. 83 at 9.

Because Plaintiff seeks documents related to a different escape plot, not involving him or Defendant, that occurred approximately a year before the allegedly fabricated escape plot of June 2019, the Court finds that the documents sought are not relevant to Plaintiff's First Amendment claim. Plaintiff's involvement, or lack thereof, with a separate escape plot is not relevant to demonstrating that Defendant retaliated against Plaintiff because of his verbal complaint to Captain Sais. Thus, the Court **SUSTAINS** Defendant's relevance objection to Set One, RFP No. 6.

Based on an *in camera* review, the Court notes that the documents withheld in response to RFP No. 6, bates-numbered AG00000165–174, consist of a memorandum and attachments concerning the determination and appeal of Plaintiff's formal, written

15

complaint against Defendant (made as part of the administrative exhaustion process). It is not clear how these documents are responsive or related to RFP No. 6. Indeed, these documents are seemingly responsive to Set Two, RFP No. 1, which requests documents related to Plaintiff's appeal following his formal complaint against Defendant. *See* Doc. No. 83 at 49–50. Thus, the Court will address Defendant's objections to the production of these documents in the context of Set Two, RFP No. 1.

### 6.  <u>RFP No. 7</u>

In RFP No. 7, Plaintiff seeks all documents including, but not limited to, "communications, e-mails, memorandum that refer to or relate to the verbal complaint of defendant E. Duarte's misconduct that plaintiff made to Captain Sais on or about the first or second week of June 2019." Doc. No. 83 at 22. The fact that Plaintiff lodged a "verbal" complaint against Defendant suggests no written documentation of such a complaint exists unless Captain Sais separately documented the complaint. And while Plaintiff suggests that responsive documents should be available in the "MAC minutes or in the Captain's minutes/logs, held by the Captains assistant," he provides no basis for this belief.[6] Doc. No. 81 at 17.

Defendant currently represents, supported by a declaration from counsel, that despite a diligent search, no responsive documents exist. Doc. No. 83 at 13–14; *see also* Doc. No. 83-1. However, this representation contradicts Defendant's response to RFP No. 7, which includes several objections and indicates that "non-confidential, non-privileged documents will be produced." Doc. No. 83 at 36. Given this contradiction, the Court does not accept Defendant's representation that no responsive materials exist. Accordingly, Defendant **SHALL** produce any non-confidential, non-privileged documents responsive to Set One,

---

[6]  As the moving party, Plaintiff must demonstrate a basis for his belief that relevant, responsive materials exist and are being improperly withheld. *Muhammad v. Jenkins,* No. CV 19-7970 JAK (PVC), 2021 U.S. Dist. LEXIS 243683, at *10 (C.D. Cal. Sept. 8, 2021). "A mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel." *Id.*

3:22-cv-00446-BAS-VET

RFP No. 7. If no responsive documents exist, Defendant **SHALL** serve an amended response to RFP No. 7 stating that Defendant has no materials in his possession, custody, or control that are responsive to this request, accompanied by a declaration verifying the accuracy of that response. *See Muhammad v. Jenkins,* No. CV 19-7970 JAK (PVC), 2021 U.S. Dist. LEXIS 243683, at *9 (C.D. Cal. Sept. 8, 2021) (collecting cases requiring verification when a written response confirms that all responsive documents have been produced or that no responsive documents exist in the responding party's possession, custody, or control).

### 7. <u>RFP No. 8</u>

In RFP No. 8, Plaintiff seeks "[a]ny and all investigative reports, completed investigations, memorandum or other written material authored by [Defendant] on July 31, 2019 regarding an escape plot as well as the names of any other ISU or correctional staff involved in making this report." Doc. No. 83 at 22–23. Plaintiff seeks this information to determine the authenticity of a note mentioning Plaintiff and his purported involvement in an escape plot and to demonstrate that Defendant "rehashed" a prior escape plot. Doc. No. 81 at 17–18. Defendant lodged several objections in response to RFP No. 8, including relevance and the official information privilege, but, in response, agreed to produce non-confidential, non-privileged documents, "if any." Doc. No. 83 at 37–38. In response, Defendant also redacted a set of documents, bates-numbered AG00000175–191, based on the official information privilege and third-party privacy. Doc. No. 100 at 6.

Based on an *in camera* review, Defendant redacted pages bates-numbered AG00000177–181 (*see* Doc. No. 100 at 6), which represents a confidential supplement to an appeal based on Plaintiff's formal, written complaint against Defendant. Defendant did not author this supplement. Nor is it clear how the supplement is responsive or related to RFP No. 8. Indeed, the supplement is seemingly responsive to Set Two, RFP No. 1, which requests documents related to Plaintiff's appeal following his written complaint against Defendant. *See* Doc. No. 83 at 49–50. Thus, the Court will address Defendant's objections to the production of these pages in the context of Set Two, RFP No. 1.

17

The remaining documents, bates-numbered AG00000175–76, 182–191, were not redacted. Moreover, the documents relate to Plaintiff's written complaint and his placement in the Administrative Segregation Unit. None contain a third-party's private information, nor do they implicate security concerns. To the extent not already produced to Plaintiff, Defendant **SHALL** produce documents bates-numbered AG00000175–76, 182–191.

As to Defendant's response that he would produce non-confidential, non-privileged documents, "if any," the Court finds that the response is vague and evasive, and as such, it is unclear if such documents exist. *See* Fed. R. Civ. P. 34(b)(2)(B)–(C) (requiring that a responding party serve a written response to each request stating that it will produce copies of responsive documents or specifying grounds for objection and stating whether any responsive materials are being withheld on the basis of that objection). The Privilege Log creates further confusion by suggesting Defendant is withholding responsive materials, when, as noted above, the information withheld in response to RFP No. 8 does not relate to RFP No. 8. Accordingly, Defendant **SHALL** serve an amended response to Set One, RFP No. 8 confirming whether Defendant has responsive material that is non-confidential and non-privileged, and if so, **SHALL** produce such materials. If no responsive documents exist, Defendant **SHALL** serve an amended response to RFP No. 8 stating that Defendant has no materials in his possession, custody, or control that are responsive to this request, accompanied by a declaration verifying the accuracy of that response. *Muhammad*, 2021 U.S. Dist. LEXIS 243683, at *8–9.

### 8.   RFP No. 9

In RFP No. 9, Plaintiff seeks "[a]ny and all orders, communications, e-mails or other written materials regarding Warden to Warden, of Centinela and Calipatria, agreement to transfer plaintiff to Calipatria Ad-Seg as referenced in non-committee endorsement dated" June 24, 2019. Doc. No. 83 at 23. Plaintiff argues this information is relevant to prove that Defendant was involved in having Plaintiff transferred out of Centinela prison to accomplish Defendant's retaliation and "get rid of plaintiff." Doc. No. 81 at 18.

Defendant lodged several objections in response to RFP No. 9, including relevance, but agreed to produce "non-confidential, non-privileged documents." Doc. No. 83 at 38. And based on the official information privilege and/or third-party privacy, Defendant produced documents, bates-numbered AGO0000059–65, 76–99, with redactions. Doc. No. 100 at 4–5. Based on an *in camera* review, the documents at issue are email correspondence relating to the transfer of three inmates, including Plaintiff, to Calipatria State Prison and a "Transfer Record," dated June 24, 2019.

The emails identify individual CDCR personnel by first and last name with their emails and phone numbers also listed. The emails also reference other inmates being transferred. Additionally, the Transfer Record is a one-page document that identifies three inmates, including Plaintiff, being transferred. Defendant redacted the names of prison officials, their email addresses and phone numbers, and all information concerning other inmates. Critically, Defendant did not redact the last names of personnel that initiated the email correspondence or approved the transfer decisions. Nor did Defendant redact Defendant's name when it appeared in the documents, and as such, Plaintiff has the information necessary to identify the relevant decisionmakers.

Telles explains that disclosing the identifying information of CDCR personnel is strictly prohibited to protect staff and their families, avoid impeding staff members' investigative efforts, and prevent inmates from being pressured to disclose the private information of staff members. Telles Decl. at 69–71 (¶¶ 13–15). Telles also explains that allowing Plaintiff to obtain other inmates' personal information could result in Plaintiff or other inmates becoming "targeted by others for harassment, assaults, and even death." *Id.* at 70 (¶ 15).

The Court agrees that the personal information of both inmates and staff is private information the disclosure of which implicates security concerns. Moreover, information concerning the transfer of third-party inmates is neither responsive to RFP No. 9 nor relevant to Plaintiff's First Amendment claim. Accordingly, the Court **FINDS** that Defendant's redactions in documents bates-numbered AGO0000059–65, 76–99 are

19

appropriate and **SUSTAINS** Defendant's objections to the disclosure of such information based on the official information privilege, third-party privacy, and relevance.

### 9. <u>RFP No. 10</u>

In RFP No. 10, Plaintiff seeks "Centinela C-Facility Unit 3 Control logs that reference [Plaintiff's] movement to and from the unit throughout June, 2019 that may be relevant to this claim." Doc. No. 83 at 23. Plaintiff claims that these materials are relevant to show that he was "paged to the program office" shortly after Defendant and three other officers signed in to the C-Facility yard. Doc. No. 81 at 14. Plaintiff seeks to show that Defendant confronted Plaintiff "outside of unit 3," which led to the "misconduct" reported by Plaintiff. *Id.*

Defendant lodged several objections in response to RFP No. 10, including relevance, but agreed to produce non-confidential, non-privileged documents. Doc. No. 83 at 38– 39. The Privilege Log does not show that Defendant withheld any documents in response to RFP No. 10, and thus none were among the documents submitted for *in camera* review. *See generally* Doc. No. 100. As such, it is not clear what, if any, responsive documents are in dispute. Therefore, for the sake of clarity, and because Defendant committed to producing non-confidential, non-privileged documents, Defendant **SHALL** re-produce those materials responsive to Set One, RFP No. 10.

### 10. <u>RFP No. 11</u>

In RFP No. 11, Plaintiff seeks "Centinela C-Facility staff sign-in log for the gym on June 24, 2019 of all staff and administrative staff . . . ." Doc. No. 83 at 23. Plaintiff seeks this gym sign-in log for the same reasons he seeks the control logs in RFP No. 10—to show that Defendant signed in to the C-Facility yard. Doc. No. 81 at 14. With his Opposition, Defendant produced the June 24, 2019 gym sign-in log in redacted form. Doc. No. 83 at 7. Defendant redacted information regarding other individuals who entered the facility. *Id.*; *see also* Doc. No. 83-1 at 4–11. Given that Plaintiff requested the gym sign in log to show whether Defendant signed into the gym (and apparently he did not), the production of the

redacted log satisfies RFP No. 11. Accordingly, the Court finds that Plaintiff's request to compel a response to Set One, RFP No. 11 is **MOOT**.

### 11.    RFP No. 12

In RFP No. 12, Plaintiff seeks "[a]ny and all formal and informal written complaints (including but not limited to 602 forms) against [Defendant] (including all written responses, appeals, reports, investigations, and or correspondences [sic], regarding the complaints)" during Defendant's entire employment with CDCR. Doc. No. 83 at 23. Plaintiff seeks these documents to show that Defendant engaged in "similar malicious behavior of lying, falsifying and fabricating information." Doc. No. 81 at 19.

Defendant lodged several objections in response to RFP No. 12, including, but not limited to, relevance, proportionality, vagueness, overbreadth, and third-party privacy, and stated that he would not produce any documents. Doc. No. 83 at 40–41. Defendant's arguments focus primarily on admissibility under Federal Rule of Evidence 404(b). Doc. No. 83 at 12–13. While admissibility does not control this dispute, the Court agrees that Plaintiff's request, as written, is overbroad as to time and scope, and seeks irrelevant documents as it seeks every complaint on every subject, in whatever form, for Defendant's entire employment period. Therefore, the Court **SUSTAINS** Defendant's objections to Set One, RFP No. 12 based on relevance, proportionality, and overbreadth.

### B.    Plaintiff's Requests for Production of Documents, Set Two

### 1.    RFP No. 1

In RFP No. 1, Plaintiff seeks "any and all documents, communications, notes, e-mails and the Inmate Appeal Log # CEN-19-01349 with reasons for excessive delay in responding, as well as third level response and reasons for delay." Doc. No. 83 at 49–50. Plaintiff argues that these documents are relevant to prove "a cover up" regarding Defendant's "misconduct." Doc. No. 81 at 19–20. Plaintiff requests *in camera* review of redactions to responsive documents. *Id.*

Defendant lodged several objections in response to RFP No. 1, including relevance, proportionality, vagueness, overbreadth, and third-party privacy, and agreed to produce

3:22-cv-00446-BAS-VET

non-confidential, non-privileged documents "if any are located after a diligent search." Doc. No. 83 at 57–58. The Privilege Log further reflects that Defendant withheld responsive documents, bates-numbered AG00000032–36 and AG00000113–117, based on the official information privilege and/or third-party privacy. Doc. No. 100 at 4–5. Based on an *in camera* review, the documents withheld are copies of a "Confidential Supplement to Appeal" relating to Plaintiff's formal, written complaint that Defendant fabricated information to have Plaintiff transferred, Appeal Log No. CEN-X-19-01349, dated August 15, 2020 ("Confidential Supplement"). Further, as noted above, Defendant withheld documents/information responsive to RFP No. 1 in the context of other RFPs. Specifically, in response to Set One, RFP Nos. 6 and 8, Defendant (i) produced a redacted memorandum (with attachments) concerning the determination and appeal of Plaintiff's written complaint against Defendant, bates-numbered AG00000165–174 (hereinafter "Appeal Memo"); and (ii) withheld another copy of the Confidential Supplement, bates-numbered AG00000177–181. *See* Doc. No. 100 at 6; *see also* Doc. No. 103 (lodging redacted versions of documents that were provided to Plaintiff).

Defendant represents that he is not involved in the grievance process, does not contend that Plaintiff failed to exhaust administrative remedies, and any delay in the grievance process is not relevant to Plaintiff's First Amendment claim. Doc. No. 83 at 8–9. Therefore, per Defendant, none of the documents sought "go to any element of Plaintiff's claim or specifically involve Plaintiff or Defendant." *Id.* at 11. The Court disagrees.

First, the Court finds that the Confidential Supplement (withheld in its entirety) is relevant to Plaintiff's remaining claim. The Confidential Supplement discusses Plaintiff's allegations that Defendant fabricated information to have Plaintiff transferred, summarizes interviews conducted with various parties, including Plaintiff and Defendant, concerning Plaintiff's allegations, and offers conclusions regarding Plaintiff's appeal. In short, the Confidential Supplement is part of the investigation into whether Plaintiff suffered any retaliation for exercising his protected First Amendment right to make a verbal complaint against Defendant.

Second, the Court does not see a basis for withholding the *entirety* of the Confidential Supplement based on the official information privilege or third-party privacy. For example, several paragraphs summarize the investigator's interview with Plaintiff. It is difficult to conceive what security concerns arise from disclosing the summary of Plaintiff's interview. Plaintiff was present (it was his own interview) and he already knows what he said to the investigator and what he alleges. Similarly, Defendant's interview summary, representing his account of events, is especially relevant and does not raise security concerns since it relates to events involving Plaintiff that transpired nearly six years ago. The conclusion expressed by the investigator is similarly innocuous, and presumably Plaintiff is already aware of the investigation's result.

Nevertheless, the Confidential Supplement also contains interview summaries for third-party witnesses, including other inmates and correctional officers and explains why the investigator selected the specific individuals to be interviewed. Moreover, the correctional officers are identified by first initial and last name, including their positions, and inmates are identified by both last name and CDCR number. Given the information disclosed, the Court finds that disclosure of the third-party interviews presents security and safety concerns in that they disclose confidential investigative techniques and identify individuals that cooperated in the investigation. *See* Telles Decl. at 72 (¶ 20). Furthermore, because Plaintiff is a validated member of the Mexican Mafia and has a history of committing crimes for the benefit of the Mexican Mafia, disclosure of information provided by other inmates also raises concerns regarding institutional and inmate safety. Telles Decl. at 68, 72 (¶¶ 6, 20–22) (explaining that gang members will learn who informed on them, who failed them, or who did not keep proper gang protocols, which may mark them for retaliation or discipline).

In short, portions of the Confidential Supplement contain sensitive personal/inmate information or investigatory techniques, while others do not. Therefore, the Court **SUSTAINS IN PART** Defendant's objections based on the official information privilege and third-party privacy. Defendant **SHALL** produce the Confidential Supplement (bates-

numbered AG00000032–36, 113–117, and 177–181) but *may* **REDACT** the following information: (i) section entitled "Witnesses" on page 1; and (ii) summaries of all third-party witness interviews, starting on page 2 and concluding on page 4. **The Court cautions Defendant that electing to redact and withhold the identified information prevents Defendant from subsequently relying on such information in support of his defenses.**

Lastly, as to the Appeal Memo, the Court notes that the only information redacted is the first name of the warden for Centinela State Prison. *See* AGO000165. The Court finds that the redaction is appropriate as not only is the information irrelevant to Plaintiff's claim, but its disclosure creates security risks. *See* Telles Decl. at 69, 72 (¶¶ 13, 19). Accordingly, the Court **FINDS** that the official information privilege and third-party privacy support redaction of the warden's identifying information.

### 2.    <u>RFP No. 3</u>

In RFP No. 3, Plaintiff seeks "all video tape from June 1, 2019 to June 24, 2019 from any cameras on C-Facility at Centinela, including the gym and yard cameras." Doc. No. 83 at 50.[7] Plaintiff contends that these materials are relevant to show Defendant and three other officers confronting Plaintiff on various dates in June 2019, which "precipitated defendant's misconduct" and Plaintiff brining a complaint against Defendant. Doc. No. 81 at 20.

Defendant lodged several objections and represented in response to RFP No. 3 that after a diligent search, Defendant could not locate any responsive documents. Doc. No. 83 at 59–60. In its Opposition, Defendant continues to represent that no responsive materials exist. Doc. No. 83 at 13–14; *see also* Telles Decl. at 71 (¶ 18). "[T]he court cannot order a party to produce documents that do not exist." *Muhammad*, 2021 U.S. Dist. LEXIS 243683,

---

[7] Plaintiff suggests that RFP No. 3 also seeks "hand held or body worn camera" footage, which purportedly "shows Defendant and three other officers confronting plaintiff in front of unit 3 on or about June 10 to the 13." Doc. No. 81 at 20. However, RFP No. 3, as written, is limited to videotape from cameras "on C-Facility at Centinela." The Court does not interpret RFP No. 3 to include video from a handheld or body worn camera.

at *10. Given Defendant's representations, Defendant **SHALL** provide a declaration verifying the accuracy of his response to RFP No. 3. *Id.* at *8–9.

### 3.  <u>RFP No. 4</u>

In RFP No. 4, Plaintiff seeks "[a]ny and all original photographs of (2) individual sections of inmate manufactured rope that were discovered in Facility C kitchen, as referenced in Confidential Disclosure form dated 8/19/19." Doc. No. 83 at 50. Plaintiff contends these objects were not actually rope but rather "small strips of cloth that inmates used to tie up things as a make-shift weight to work out." Doc. No. 81 at 21. Thus, the pictures would purportedly show that Defendant "embellished this evidence to bolster [the] fabricated escape plot." *Id.*

Defendant lodged several general objections, but agreed to produce non-confidential, non-privileged responsive documents if any were located after a diligent search. Doc. No. 83 at 60. Presently, Defendant does not argue that no responsive documents exist or state that he withheld any responsive material that is confidential or privileged. Nor is any responsive material identified on the Privilege Log. Instead, Defendant states only that "Plaintiff does not get to define what is or is not contraband" and contraband confiscated from other people or possessed by Plaintiff is outside the scope of this litigation. Doc. No. 83 at 9. It may be true that Plaintiff does dictate what constitutes "contraband," but the Court disagrees that the requested materials, as described by Plaintiff, are beyond the scope of this action as they relate directly to Defendant's purported efforts to fabricate an escape plot involving Plaintiff. As such, they relate to Defendant's alleged retaliatory conduct. Moreover, the specificity and limited nature of any responsive materials make their production a low burden compared to their importance to Plaintiff's claim, and thus the request is proportional to the needs of this case. Further, Defendant's failure to identify any responsive material in the Privilege Log and failure to argue that no responsive documents exist indicates to the Court that non-confidential, non-privileged responsive documents exist. Therefore, as he committed to doing in his response, Defendant **SHALL** produce copies of any photographs responsive to Set Two, RFP No. 4.

### 4.    **RFP No. 5**

In RFP No. 5, Plaintiff seeks "[a]ny and all original photographs of the map that [inmate] Cruz received from an unknown staff member which showed some sort of blue print which showed the interior of the prison and the exterior surrounding area, as referenced in the Confidential Disclosure Form dated 8/19/19." Doc. No. 83 at 50. Plaintiff asserts that this alleged "escape evidence" "will prove that Defendant lied and embellished its content of a prison blueprint to support and bolster his (defendant's) fabricated escape plot." Doc. No. 81 at 21.

Defendant lodged several general objections and, in response, stated that he will not produce any responsive documents. Doc. No. 83 at 61. However, the Privilege Log does not show that Defendant withheld any responsive documents. Doc. No. 100 at 4–7. Defendant also does not argue that no responsive documents exist or state that he withheld any responsive material that is confidential or privileged. Instead, Defendant makes the same general arguments regarding contraband made in response to Set Two, RFP No. 4. Doc. No. 83 at 9. Therefore, for the same reasons articulated as to Set Two, RFP No. 4, the Court finds that the requested materials are relevant and proportional to the needs of this case to the extent the photographs relate to the escape plot purportedly fabricated by Defendant.

Moreover, Defendant's failure to identify any responsive material in the Privilege Log and failure to respond that he is withholding any responsive materials or that no responsive documents exist, as required by Fed. R. Civ. 34, indicates to the Court that non-confidential, non-privileged responsive documents exist. Accordingly, Defendant **SHALL** serve an amended response to Set Two, RFP No. 5 confirming whether Defendant has responsive material that is non-confidential and non-privileged, and if so, **SHALL** produce such materials. If no responsive materials exist, Defendant **SHALL** serve an amended response to RFP No. 5 stating that Defendant has no materials in his possession, custody, or control that are responsive to this request, accompanied by a declaration verifying the accuracy of that response. *Muhammad*, 2021 U.S. Dist. LEXIS 243683, at *8–9.

3:22-cv-00446-BAS-VET

### 5. __RFP No. 6__

In RFP No. 6, Plaintiff seeks "[a]ny an[d] all original photographs of the escape paraphanilia [sic] leatherman tool that shows a knife on it as referenced in [A]dministrative Segregation Unit Placement Notice dated 6/25/19 and on the Confidential Disclosure Form dated 8/19/19." Doc. No. 83 at 50. Plaintiff contends the photographs are relevant because Defendant "alleges it is escape paraphenilia [sic]" and Defendant falsely claimed that it was why Plaintiff was transferred. Doc. No. 81 at 21.

Defendant lodged several general objections, but, in response, agreed to produce non-confidential, non-privileged responsive documents if any were located after a diligent search. Doc. No. 83 at 61–62. Presently, Defendant does not argue that no responsive documents exist or state he withheld any responsive material that is confidential or privileged. Nor is any responsive material identified on the Privilege Log. Rather, Defendant makes the same general arguments regarding contraband made in response to Set Two, RFP No. 4. Doc. No. 83 at 9. Therefore, for the same reasons articulated as to Set Two, RFP No. 4, the Court finds that the requested materials are relevant and proportional to the needs of this case. Further, Defendant's failure to identify any responsive material in the Privilege Log and failure to argue that no responsive documents exist indicates to the Court that non-confidential, non-privileged responsive documents exist. Accordingly, as he committed to doing in his response, Defendant **SHALL** produce copies of any photographs responsive to Set Two, RFP No. 6.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel Discovery and **ORDERS** the following:

1.    As to Set One, RFP No. 1, to the extent he has not already done so, Defendant **SHALL** produce the "non-confidential duty statement."

2.    As to Set One, RFP No. 2, to the extent he has not already done so, Defendant **SHALL** produce any "non-confidential duty statements."

27

3.     As to Set One, RFP No. 4, the Court **SUSTAINS** Defendant's objections based on relevance and the official information privilege.

4.     As to Set One, RFP No. 5, the Court **SUSTAINS** Defendant's relevance and third-party privacy objections, and to the extent Defendant produced documents bates-numbered AG00000066–75 with the redactions lodged with the Court, those redactions may remain in place.

5.     As to Set One, RFP No. 6, the Court **SUSTAINS** Defendant's objection based on relevance.

6.     As to Set One, RFP No. 7, Defendant **SHALL** produce any non-confidential, non-privileged responsive documents. If no responsive documents exist, Defendant **SHALL** serve an amended response to RFP No. 7 stating that Defendant has no materials in his possession, custody, or control that are responsive to this request, accompanied by a declaration verifying the accuracy of that response.

7.     As to Set One, RFP No. 8, Defendant **SHALL** serve an amended response confirming whether Defendant has responsive material that is non-confidential and non-privileged, and if so, **SHALL** produce such materials. If no responsive materials exist, Defendant **SHALL** serve an amended response to RFP No. 8 stating that Defendant has no materials in his possession, custody, or control that are responsive to this request, accompanied by a declaration verifying the accuracy of that response. To the extent not already produced to Plaintiff, Defendant **SHALL** produce documents bates-numbered AG00000175–76, 182–191.

8.     As to Set One, RFP No. 9, the Court **SUSTAINS** Defendant's objections based on the official information privilege, third-party privacy, and relevance to the disclosure of the information redacted on documents bates-numbered AGO0000059–65, 76–99.

9.     As to Set One, RFP No. 10, Defendant **SHALL** produce any documents previously produced in response to RFP No. 10.

10.     As to Set One, RFP No. 11, Plaintiff's request to compel a response is **MOOT**.

11.     As to Set One, RFP No. 12, the Court **SUSTAINS** Defendant's objections based on relevance, proportionality, and overbreadth.

12.     As to Set Two, RFP No. 1, the Court **SUSTAINS IN PART** Defendant's objections based on the official information privilege and third-party privacy. Defendant **SHALL** produce the Confidential Supplement (bates-numbered AG00000032–36, 113–117, and 177–181) but *may* **REDACT** the following information: (i) section entitled "Witnesses" on page 1; and (ii) summaries of all third-party witness interviews, starting on page 2 and concluding on page 4. The Court also **FINDS** that the official information privilege and third-party privacy support redaction of the warden's identifying information on the Appeal Memo, bates-numbered AGO000165.

13.     As to Set Two, RFP No. 3, Defendant **SHALL** serve a declaration verifying the accuracy of his response to RFP No. 3.

14.     As to Set Two, RFP No. 4, Defendant **SHALL** produce copies of any responsive photographs.

15.     As to Set Two, RFP No. 5, Defendant **SHALL** serve an amended response, confirming whether Defendant has responsive material that is non-confidential and non-privileged, and if so, **SHALL** produce such materials. If no responsive materials exist, Defendant **SHALL** serve an amended response to RFP No. 5 stating that Defendant has no materials in his possession, custody, or control that are responsive to this request, accompanied by a declaration verifying the accuracy of that response.

16.     As to Set Two, RFP No. 6, Defendant **SHALL** produce copies of any responsive photographs.

Defendant **SHALL** produce the documents and serve the amended responses **ORDERED** herein by no later than **July 30, 2025**.

**IT IS SO ORDERED.**

Dated: July 23, 2025

_____
Hon. Valerie E. Torres
United States Magistrate Judge

29

3:22-cv-00446-BAS-VET